**Judith KLEIN, Plaintiff-Appellant,**

v.

**TRUSTEES OF INDIANA UNIVERSITY and Nancy Buckles, Defendants-Appellees.**

No. 84–2124.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1985.

Decided June 20, 1985.

Alfred I. Towell, Taylor, Towell & Bauer, Bloomington, Ind., for plaintiff-appellant.

Gregory J. Utken, Roberts, Ryder, Rogers & Scism, Indianapolis, Ind., for defendants-appellees.

Before COFFEY, FLAUM, Circuit Judges, and JAMESON, Senior District Judge.[*]

COFFEY, Circuit Judge.

The plaintiff appeals a grant of summary judgment to the defendants on her retaliatory discharge claim under Title VII of the 1964 Civil Rights Act as well as the dismissal of pendent claims for wrongful discharge, breach of employment contract, and intentional infliction of emotional distress. We affirm.

## I.

The plaintiff, Judith Klein, was employed as a staff psychiatrist in the Counseling and Psychiatric Services Unit ("CAPS") of the Indiana University Student Health Center in July 1974. When Klein was hired, the Student Health Center, located in Bloomington, Indiana, allowed Klein a specified number of hours during three afternoons per week to conduct a private practice in her office in her home. According to Klein, this arrangement was permitted under Health Center policy and was a determinative reason for her accepting employment in 1974. The written policy of the Health Center concerning time off provided:

> "(1) A half-day per week will be granted to compensate for subsequent Saturday morning coverage or other Student Health Center authorized activities performed outside of regular hours that week."

Klein became the Acting Director of Psychiatry at the Student Health Center in 1976 and was appointed as an Associate Director of Psychiatry in 1977.

In January of 1979, the University appointed one Dr. Thomas Foster as director of CAPS, rather than Klein who had also applied for the position. In May of 1979, Foster eliminated the Associate Director of Psychiatry position. On June 8, 1979, Klein filed a charge with the Equal Employment Opportunity Commission ("EEOC") and a complaint with the Indiana Civil Rights Commission alleging that the defendant had awarded the position of Director to a less-qualified male.

In July of 1979, Foster directed Klein to consolidate her private practice time into one afternoon a week, Thursdays. Although she objected to the change in her

[*] The Honorable William J. Jameson, Senior District Judge of the United States District Court for the District of Montana, is sitting by designation.

schedule, Klein complied with Foster's order. According to Klein, Foster urged her to dismiss the charge before the EEOC and also "continually sent her notice of administrative positions at other institutions and indicated that plaintiff will be happier somewhere else." Foster, who had not planned to remain in the Director's position for an extended period of time, left an unfavorable evaluation of Klein's performance and competency when he resigned from CAPS in the spring of 1981. The defendant, Nancy Buckles, replaced Foster as Director of CAPS.

The EEOC issued a right to sue letter on April 14, 1981, and because the plaintiff, Klein, allowed 90 days to pass without filing an action in Federal court, she abandoned her right to pursue in Federal court her claim that the University had discriminated against her on the basis of sex when it failed to promote her to the position of Director in 1979.[1] On August 19, 1981, shortly after the 90-day limitation period for filing the sex discrimination lawsuit in Federal court had passed, Buckles informed Klein that her private practice time could no longer be taken on Thursday afternoons but must be taken on either Tuesday or Friday morning. Klein, who at that time was the only staff psychiatrist at the Student Health Center, was directed to alter her schedule to accommodate the schedules of two other psychiatrists who were in private practice and employed by the Student Health Center on a part-time basis. The Student Health Center, which normally employed three staff psychiatrists, obtained the services of the private part-time practitioners in order that they might provide continuous psychiatric coverage at the Center. Klein objected, arguing that most of her private patients were children who would have to miss school to see her in the morning. Although Buckles expressed some regret over the hardship caused to Klein, she declined to ask the private practitioners to change their schedules to accommodate Klein's needs. Klein responded that "she would have to think about it."

On August 20, 1981, Klein sent Buckles a memo stating:

"As per our conversation and your request of 8/19, I have given the subject considerable thought and I have decided that I will utilize Tuesday and Friday mornings as my off-clinic time."

On August 24, 1981, Buckles responded to Klein by written memo, stating that Klein must have misunderstood—she was to select either Tuesday morning or Friday morning, but not both. On the following day, Klein sent Buckles a memo stating simply, "I did not misunderstand."

Buckles referred the situation to Nancy Tardy, the Director of the Student Health Center, who informed Klein by memo dated August 27, 1981, that Klein could not be given two half days of private practice time per week. Tardy further instructed Klein that because Buckles had scheduled Tuesday morning for Klein's private practice times, she expected Klein to fulfill her normal duties on Friday mornings. Klein did not report to work on the following morning, Friday, August 28, 1981.

On September 3, 1981, Tardy sent Klein a memo stating that unless Klein provided a satisfactory explanation for not reporting to work the previous Friday, the document was to be considered "a formal warning on grounds of dereliction of professional duties and insubordination." Tardy further warned Klein that, "[a]ny lack of action on your part in fulfilling scheduled Clinic Duties as ascertained by Acting Director, Nancy B. Buckles, at times other than your Tuesday mornings off will be grounds for dismissal." Klein did not report for work the following morning, Friday, September 4, 1981.

On September 10, 1981, noting that she had not received a satisfactory explanation of Klein's failures to report to work on Friday mornings, Tardy informed Klein that, "[a]ny further failure to meet the schedule established with relation to patient appointments and other requirements will be grounds for a severe sanction." On

1. The Indiana Civil Rights Commission made a finding of probable cause on February 16, 1982.

the following morning, Friday, September 11, 1981, Klein once again failed to report to work.

On September 17, 1981, Tardy informed Klein by memo that she had "given no satisfactory reason for [not being available for her scheduled Clinic Duties on August 28, September 4, and September 11]." After again instructing Klein to schedule her private practice patients on Tuesday mornings and to report for work on Friday mornings, Tardy also directed Klein to confirm in writing that she would report for work on Friday morning. On that day, Klein responded by memo, "I have already and repeatedly indicated my intentions regarding Tuesday and Friday mornings. Nothing has transpired that indicates to me any need or incentive to change this." Klein did not report to work on either the following morning, Friday, September 18, 1981, or on Friday morning, September 25, 1981.

On September 29, 1981, Tardy sent Klein a dismissal notice. Noting that Klein had failed to report to work on the mornings of August 28, September 4, September 11, September 18, and September 25, Tardy acknowledged that Klein had "indicated that you intend to continue to not be available on Friday mornings." Tardy further stated, "I have received no reasonable explanation for these absences or planned future absences." Tardy discharged Klein, giving her one month notice "to facilitate the disposition of patients presently under your care."

Klein filed a retaliatory discharge claim with the EEOC and the Indiana Civil Rights Commission on November 16, 1981. After receiving a right to sue letter from the EEOC, the plaintiff filed suit in both the United States District Court for the Southern District of Indiana and in Indiana state court alleging a pattern of harassment and retaliation for filing the sex discrimination charge in 1979 in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3. Additionally, the plaintiff alleged pendent state claims of wrongful discharge, breach of contract, and intentional infliction of emotional distress.

The defendants filed a motion for summary judgment arguing that the plaintiff's claim of harassment by Foster was time-barred and that the retaliatory discharge claim should fail on the merits. The defendants further argued that they were immune to suit in Federal court on the pendent state claims under the Eleventh Amendment to the United States Constitution. The district court held that under 42 U.S.C. § 2000e–5(e), the plaintiff was barred from obtaining relief on acts occurring prior to January 20, 1981. Thus, the plaintiff could only base her retaliatory discharge case on Foster's "lukewarm" evaluation of Klein, made in the spring of 1981, and the events occurring after January 20, 1981. Applying the method of evaluating discrimination cases set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the district court found that the plaintiff had established a *prima facie* case of retaliatory discharge. Turning to the second question—whether the defendant had articulated a legitimate, non-discriminatory reason for its employment decision—the district court determined that "Buckles imposed the disputed work schedule on the plaintiff to provide for adequate psychiatric coverage at the Health Center.... This was within the written policy guidelines of the Student Health Center and the Tuesday-Friday limitation was required to enable Buckles to employ part-time psychiatrists to assist in providing adequate coverage during the school year." Addressing the question of whether the defendants' reason for changing Klein's schedule was a pretext, the final step in the *McDonnell Douglas* analysis, the court held that, "Buckles' conduct in requiring the plaintiff to adjust her schedule to accomodate the part-time psychiatrists' schedules in providing continuous, adequate coverage of the psychiatric services was reasonable and does not indicate retaliatory motivation." According to the district court, Buckles' refusal to compromise with the plaintiff by merely asking the private practitioners to

change their schedules did not establish pretext because Buckles had to accommodate the private practitioners' schedule requirements to be able to obtain their services on a part-time basis. Because the plaintiff "failed to show that the defendants' reasons were not the true reasons for her discharge or were a pretext for discrimination, ... the plaintiff ... failed to raise a material issue of fact with regard to her Title VII claim. Accordingly, the defendants are entitled to summary judgment on the claim." As to the pendent state law claim, the district court noted that "the plaintiff's allegations only speak to Buckles acting in her official capacity as Director of CAPS. The plaintiff has not shown that Buckles acted in bad faith or otherwise acted outside the scope of her authority." Judge Dillin concluded that Buckles was sued in her official, rather than her individual, capacity. The judge dismissed the pendent state law claims because the Trustees of Indiana University and Buckles, who was sued in her official capacity, are immune to suit in Federal court on state law claims under the Eleventh Amendment of the United States Constitution.

## II.

### A.  Summary Judgment as to the Title VII Claim.

The framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) requires the plaintiff initially to establish a *prima facie* case of discrimination.[2] To establish a *prima facie* case of retaliatory discharge under 42 U.S.C. § 2000e–3, the plaintiff must show: (1) he opposed an employment practice that was unlawful within the meaning of Title VII or he participated in a proceeding under Title

VII; (2) he suffered an adverse action by his employer; (3) because of his opposition or participation.[3] *See Rucker v. Higher Educational Aids Bd.*, 669 F.2d 1179, 1182 (7th Cir.1982). The plaintiff must show that the employer would not have taken the adverse action "but for" his opposition or participation. *McCluney v. Jos. Schlitz Brewing Co.*, 728 F.2d 924, 928 (7th Cir. 1984). Successfully establishing a *prima facie* case gives rise to a rebuttable presumption of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. To rebut the presumption of discrimination, the defendant must articulate a legitimate, non-retaliatory reason for its actions. *Id.* The defendant's burden in presenting a legitimate, non-discriminatory reason for its actions is only a burden of production; the burden of persuasion rests at all times on the plaintiff. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Thus, "[i]t is sufficient that the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for [the allegedly discriminatory action]. If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Id.* If the defendant rebuts the presumption of discrimination by articulating legitimate, non-discriminatory reasons for its actions, the plaintiff "must have the opportunity to demonstrate that the proper reason was not the true reason for the employment decision ... by persuading the court that a discriminatory reason more likely motivated the employer or ... by showing that the

---

2.  42 U.S.C. § 2000e–3 provides in pertinent part:
    "(a) It shall be an unlawful employment practice for an employer to discriminate against any of its employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an inves-

tigation, proceeding, or hearing under this subchapter."

3.  The *prima facie* case element of the *McDonnell Douglas* test is flexible and may be adapted to the fact situation as appropriate. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 n. 5, 101 S.Ct. 1089, 1093 n. 5, 67 L.Ed.2d 207 (1981).

employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095.

■ The plaintiff argues that her complaint established a *prima facie* case of retaliatory discharge and that since the defendants articulated legitimate, nondiscriminatory reasons for their actions, a question of fact exists; thus, summary judgment should have been denied. According to Klein, in determining whether the defendants' proffered reason for taking its actions was a pretext—the ultimate factual inquiry in the *McDonnell Douglas* analysis—the district court deprived plaintiff of her "rightful opportunity to prove at trial that the legitimate reasons offered by the defendant were not its true reasons." In essence, the plaintiff argues that proof is presented in an employment discrimination case in an invariable order: (1) the plaintiff establishes a *prima facie* case; (2) the defendant articulates a non-discriminatory reason; (3) the plaintiff presents evidence that the proffered reason is a pretext. Thus, under Klein's theory, the district court may *never* grant summary judgment in a Title VII action when a defendant has rebutted the plaintiff's *prima facie* case by articulating a legitimate, non-discriminatory reason for its employment action because to do so would deprive the plaintiff of its opportunity to prove that the proffered reason was a pretext.

The framework for evaluating proof of a discriminatory claim established by *McDonnell Douglas* "is merely a model for ordering and evaluating evidence concerning employment discrimination." *Davis v. Weidner,* 596 F.2d 726, 730 (7th Cir.1979); *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). The *McDonnell Douglas* framework does not prevent the judge from searching for evidence of pretext in the evidence presented to establish a *prima facie* case:

"In saying that the presumption drops from the case, we do not imply that the trier of fact no longer may consider evidence previously introduced by the plain-

tiff to establish a *prima facie* case. A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual."

*Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. Furthermore, the *McDonnell Douglas* decision did not relieve the plaintiff of its obligation to present sufficient evidence to resist a Rule 41(b) motion to dismiss:

"[I]t is not necessarily error for a district court to grant a Rule 41(b) motion at the close of the plaintiff's case based on the argument that defendant must present evidence of non-discriminatory justification for its actions so that the plaintiff may then come forward again to present evidence of pretext. Rule 41(b) provides that a district court may dismiss the plaintiff's action at the close of plaintiff's presentation of evidence if the plaintiff has shown no right to relief under the facts and law. In ruling on a 41(b) motion, the district court must examine and weigh all the evidence, not just the evidence favorable to the plaintiff. Applying Rule 41(b) to Title VII cases, dismissal at the close of the plaintiff's case-in-chief is proper if the plaintiff fails to present a *prima facie* case of discrimination. Dismissal is also proper if the record at the close of the plaintiff's case-in-chief contains the defendant's reasons for its actions, and if the evidence in the record is sufficient to support a judgment in the defendant's favor."

*Ekanem v. Health & Hosp. Corp. of Marion Cty., Ind.,* 724 F.2d 563, 568 (7th Cir. 1983); *see also Skillern v. Bolger,* 725 F.2d 1121, 1122 (7th Cir.1984); *Gaballah v. Johnson,* 629 F.2d 1191, 1200 (7th Cir. 1980); *Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277, 1281–82 (7th Cir.1977). Nor did *McDonnell Douglas* relieve the plaintiff of its obligation to present sufficient

evidence to resist a summary judgment motion:

> "[The plaintiff should not] be permitted to rely on the hope that he will be able to develop evidence on cross-examination of his opponent's witnesses. This is especially true where, as here, the party opposing the motion for summary judgment has already had a chance to examine the movant's witnesses at their depositions. Under such circumstances, it is not unfair to grant summary judgment if no other evidence has been introduced indicating that their testimony is untrue."

*Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1224 (7th Cir.1980); *Parker v. Federal National Mortgage Association*, 741 F.2d 975 (7th Cir.1984); *Huhn v. Koehring Co.*, 718 F.2d 239 (7th Cir.1983); *Mitchel v. General Electric Co.*, 689 F.2d 877 (9th Cir.1982). Furthermore, this burden of producing evidence sufficient to resist a summary judgment motion is not onerous:

> "An aggrieved party ... can survive a motion for summary judgment simply by producing circumstantial evidence from which a trier of fact can reasonably infer that [a discriminatory motivation] was a determining factor in the employment decision. Once the plaintiff presents the court with some evidence that his employer harbored the prohibited motive, summary judgment for the defendant is inappropriate because there is a disputed fact material to the case. The district court may not resolve the factual issue, it must merely identify it and await the full presentation of evidence at trial for resolution."

*Parker*, 741 F.2d at 980.

Thus, it is clear from reviewing the Supreme Court cases and our cases concerning Rule 41(b) motions to dismiss and motions for summary judgment in Title VII cases that the *McDonnell Douglas* framework of analysis does not contemplate a trifurcated trial, but simply sets forth the proper method of analysis after the relevant evidence is before the court. Moreover, *McDonnell Douglas* does not prohibit utilizing the summary judgment procedure because pretrial discovery provides the plaintiff with an opportunity to show that a discriminatory motive was a determining factor in the employment decision. *Kephart*, 630 F.2d at 1224; *Parker*, 741 F.2d at 981. We hold that when a defendant has rebutted a *prima facie* case of discrimination after presenting a legitimate, nondiscriminatory reason for its employment decision in a motion for summary judgment, the district court may proceed to the last step of the *McDonnell Douglas* analysis and, assuming no issues of genuine material fact exist, may determine the ultimate issue of whether the plaintiff has shown the defendant's reason to be a pretext for actual discriminatory motivation.

█ The plaintiff also argues that the district court erred when it concluded that she had failed to "show that the defendants' proffered reasons were not the true reasons for her discharge or were pretext for her discharge." The plaintiff's rebuttal evidence must focus on the defendant's specific reasons for taking the challenged employment action. *LaMontange v. American Convenience Products, Inc.*, 750 F.2d 1405, 1414 (7th Cir.1984).[4] To establish that a discriminatory reason more likely motivated the employer in taking the challenged action, the plaintiff must present evidence sufficiently substantial to show that, in addition to the defendant's proffered reasons, a discriminatory motive was a determining factor. *Id.* In the alternative, the plaintiff must show that the defendant's proffered reason is unworthy of credence. *Id.* at 1414.

█ According to Judge Dillin, "[i]n attempting to show that the defendant's reasons are a mere pretext, the plaintiff has shown that Buckles forced her to change her schedule to accommodate the desires of

---

**4.** *LaMontange* was an age discrimination case under the Age Discrimination in Employment Act. The framework of proof established *McDonnell Douglas* is applicable to both Title VII and ADEA cases. *LaMontange*, 750 F.2d at 1409 n. 1.

the newly hired part-time psychiatrists and refused to attempt to persuade the new employees to accommodate her new schedule. She also claims that the effect of her discharge was 'decredentializing' and thus she was entitled to the procedures set forth in the medical staff bylaws." We have searched the record in vain for a copy of the Student Health Center "decredentializing" policy. Furthermore, the plaintiff has failed to produce any affidavits or exhibits supporting her contention that that administrative disputes, such as the schedule dispute, with other medical personnel were resolved by utilizing the "decredentializing" proceedings. Once the party moving for summary judgment has met its burden of demonstrating that there is no genuine issue of material fact, the party opposing the summary judgment motion must present affidavits, depositions, answers to interrogatories, or admissions which set forth disputed facts in a form admissible in evidence. Fed.R.Civ.P. 56(e). The party resisting the summary judgment motion may not rest on mere allegations. *Posey v. Skyline Corp.*, 702 F.2d 102 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Because the plaintiff failed to present evidence supporting her claim that the Health Center should have used the "decredentializing" procedure, we hold that there was no genuine issue of fact as to whether the "decredentializing" procedure should have been used.

■ As to the claim that the Student Health Center discriminated against her by refusing to attempt to persuade the private practitioners to accommodate her schedule, the defendants presented a written departmental policy requiring the continuous availability of psychiatric services. In a deposition, Nancy Tardy testified that the University directed the Student Health Center not to fill the two open psychiatrist positions until it had an opportunity to "review the Student Health Center." Because the Center could not fill the positions, it was forced to seek part-time assistance in order that they might be able to continue to provide continuous coverage. Tardy further stated that because the private practi-

tioners were established in the community, it was her understanding that "their morning schedule was easier to accommodate to our needs than their afternoon schedule, which had been booked up fairly extensively by private patients." According to Tardy, "we were in a—certainly not in a buyer's market—we were in a seller's market, and the alternatives were limited, and indeed, rescheduling Dr. Klein's half-day off was, to our way of thinking, the optimal solution at that point." Initially we note that the plaintiff has failed to present direct proof that a retaliatory motive was a factor in Buckles' decision not to attempt to persuade the private practitioners to accept morning hours. Thus, we must examine the plaintiff's evidence for circumstantial proof that the defendant's proffered reason was unworthy of credence. A review of the plaintiff's evidence fails to reveal that plaintiff produced any evidence demonstrating that the defendants' reason had no basis in fact. The plaintiff did not interview the private practitioners to find out whether their afternoon hours were in fact solidly booked by private patients. Nor did the plaintiff present evidence to demonstrate that part-time assistance by private psychiatrists was readily available. Nor did the plaintiff challenge Tardy's assertion that the University Administration required the Student Health Center not to fill the two psychiatrist positions. Because the plaintiff failed to produce any evidence raising a material issue of fact as to whether the defendants' proffered reason for its employment decision was pretextual, we hold that the district court's action in granting summary judgment to the defendants was proper.

### B.  Pendent State Claims.

■ The district court relied on an unpublished opinion, *Korf v. Ball State University*, IP 82–901–C (S.D.Ind. Mar. 11, 1983), as support for its holding that the Trustees of Indiana University and Buckles, who was sued in her official capacity, were immune from suit in Federal court on the state law claims. The plaintiff argues

that *Korf* did not really hold that Ball State University was entitled to Eleventh Amendment immunity and that the district court in actuality exercised its discretion to dismiss the pendent state claims in this case. The plaintiff further contends that the district court abused its discretion when dismissing the pendent state claims because "[t]he close relation between the transactions argues that they should not be dismissed in the instant case." "[P]endent jurisdiction is a doctrine of discretion, not a plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a Federal court should hesitate to exercise jurisdiction over state claims...." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130 (1966). *Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072 (7th Cir.), *cert. denied*, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1982); *Hixon v. Sherwin-Williams Co.*, 671 F.2d 1005 (7th Cir.1982). The state causes of action are currently pending in the Indiana state courts. Because judicial economy, convenience or fairness to the litigants would not be served by retaining the pendent state claims, the district court did not abuse its discretion by dismissing them.

The judgment of the district court is AFFIRMED.