**Eaba BOTMA, Plaintiff,**

v.

**LENON BUS SERVICE, INC.,
Defendant.**

**No. 86–C–0505.**

United States District Court,
E.D. Wisconsin.

Feb. 24, 1988.

---

Dee R. Dyer, Herrling, Myse, Swain & Dyer, Ltd., Appleton, Wis., for plaintiff.

James R. Scott, Lindner & Marsack, S.C., Milwaukee, Wis., for defendant.

## DECISION AND ORDER

STADTMUELLER, District Judge.

On May 15, 1986, plaintiff, Eaba Botma, filed his complaint in this action consisting of 11 separate causes of action which allege employment discrimination based upon age and handicap in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, the Wisconsin Fair Employment Act, Wis.Stat. § 111.31 and 42 U.S.C. § 1981. The case was originally assigned to Chief Judge Robert W. Warren and was transferred to this branch of the court on September 1, 1987 following my appointment to the federal bench. The § 1981 claims which appear in counts 4, 7, 8 and 11 of plaintiff's complaint were dismissed upon stipulation of the parties in an order entered by Judge Warren on August 11, 1987. On June 1, 1987, the defendant filed a motion for summary judgment in connection with the non–§ 1981 claims. The gist of defendant's motion is that plaintiff cannot make out a *prima facia* case of discrimination or establish that defendant's nondiscriminatory explanations for terminating plaintiff are a mere pretext for discrimination. The motion for summary judgment was fully briefed by counsel for the parties as of June 26, 1987 and is now ready for resolution.

The parties have not filed a set of stipulated facts nor has either party submitted

proposed findings. Nonetheless, the following record facts are not in dispute.

Plaintiff began work as a service mechanic at defendant's Delavan, Wisconsin terminal in approximately 1979, at age fifty five. He was a salaried employee. His duties did not require mechanical training or skills and consisted of light service work (e.g., changing oil, repairing seats and washing buses). He also earned extra money driving charter buses, which assignments were made at the discretion of the terminal manager. Defendant also employed Jerry Hinkelman, a full-time, qualified mechanic, in Delavan.

In the fall of 1982 David Lenon, defendant's president, became concerned with plaintiff's "lack of diligence in work" and a problem "with interpreting the work rules." A letter to this effect was placed in plaintiff's work file but was not delivered to him. Instead, Carol Januska, the Delavan terminal manager, talked to plaintiff about the problems. (Lenon dep. pp. 13–14).

Plaintiff injured his knee at work in February, 1983 and underwent surgery for torn ligaments. He returned to work without medical restriction at the beginning of the new school year, in September, 1983. At that time he was transferred to one of defendant's "satellite" terminals, in Darien, Wisconsin, about six miles from Delavan. His duties there consisted of driving three school bus routes, performing light maintenance work and cleaning buses. He also received charter bus assignments. During his first year at Darien plaintiff remained on salary and received fringe benefits. William Hunt, previously the Darien service mechanic, assumed plaintiff's former position at the Delavan terminal.

In September, 1984 David Lenon informed plaintiff that he could continue working at the Darien terminal but that he would be employed on an hourly basis and without fringe benefits.

On or about November 29, 1984 plaintiff filed a discrimination charge with the Wisconsin Department of Industry, Labor and Human Relations (DILHR). He alleged that he was demoted from service mechanic to bus driver and lost his benefits due to age and handicap discrimination (based on his knee injury). On or about December 27, 1984 plaintiff filed a second DILHR charge. It alleged that he had been scheduled to work during the preceding Christmas vacation but was subsequently denied that opportunity in retaliation for filing the November, 1984 DILHR charge.

On February 7, 1985 plaintiff received a written reprimand concerning five separate incidents, including the following: 1) allowing his girlfriend to assist him with sweeping buses; 2) contacting one of defendant's suppliers to complain about one of the supplier's employees; 3) violating work rules against use of physical force against student passengers; 4) changing a bus route without authorization; and 5) engaging in insubordinate communications with his supervisor over the two-way radio. Plaintiff understood the reprimand to be a final warning.

Plaintiff filed a third charge with the DILHR on or about February 19, 1985 alleging that the reprimand and defendant's failure to assign him charter trips were in retaliation for his previous DILHR charges.

Plaintiff received a second reprimand on March 19, 1985 for submitting thirty one separate student discipline reports to the Delavan School Board. The reports resulted in the suspension of riding privileges for several first graders and kindergarten pupils. The reprimand, prompted by a complaint to David Lenon from James Christianson, Business Manager for the Delavan School District, stated that the violations were not severe and the number of reports was excessive, particularly in light of the students' ages. Plaintiff was instructed to make reports only for serious incidents or substantial recurring problems.

Plaintiff was absent from work on several occasions in the spring of 1985, defendant's busy season. There is a dispute whether plaintiff gave sufficient notice of his absences. Plaintiff's employment was terminated in May 1985, at the end of the school year. He was not replaced as the

Darien terminal service mechanic, as that terminal was closed effective June, 1985.

## CONCLUSIONS OF LAW

■ Defendant seeks summary judgment on all of plaintiff's discrimination claims on the grounds that he cannot 1) make out a *prima facie* case or, 2) show that the reasons defendant offers to explain its employment decisions are a mere pretext for age discrimination. Under the ADEA, plaintiff must prove not that age was the sole factor motivating defendant's employment decisions, but that age was a "determining factor," in the sense that he would not have been treated as he was "but for" the defendant's motive to discriminate on the basis of age. *Ayala v. Mayfair Molded Prod. Corp.*, 831 F.2d 1314, 1318 (7th Cir.1987). There are two methods of proof in age discrimination cases: direct and indirect. *Id.* Plaintiff's burden on the direct method is satisfied by presentation of direct or circumstantial evidence that age was a determining factor in defendant's conduct. *LaMontagne v. American Convenience Prod. Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984).

The indirect method, first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is by far the more common mode of proof in ADEA cases. The special attraction of this approach is that it allows a victim of discrimination to prevail without presenting *any* evidence that age was a determining factor in the employer's actions. It does so by permitting the plaintiff to prove his case by eliminating all lawful motivations. *LaMontagne*, 750 F.2d at 1409–10. However, indirect proof of age discrimination does require the plaintiff first to prove a *prima facie* case by showing

(1) that he was in the protected class, (2) that he was doing his job well enough to meet his employer's legitimate expectations [footnote omitted], (3) that in spite of his performance he was discharged, and (4) that the employer sought a re-

placement for him [citations omitted]. Success gives rise to a rebuttable presumption of discrimination, and the burden then falls on the defendant to articulate lawful reasons for the discharge. The defendant's burden is only one of production; the burden of persuasion rests at all times on the plaintiff. If the defendant articulates lawful reasons, the presumption is dissolved, and the burden falls on the plaintiff to prove that the proffered reasons are a pretext, by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence [citation omitted].

*Id.* at 1409.

■ Summary judgment in discrimination cases, which typically raise issues of motive and intent, must be approached with caution. *See e.g., Friedel v. City of Madison*, 832 F.2d 965, 972 (7th Cir.1987). Nonetheless, discrimination suits are not immune from summary disposition. Thus, where a plaintiff cannot establish that his job performance satisfied his employer's legitimate expectations, he cannot make out a *prima facie* case and summary judgment is proper. *Huhn v. Koehring Co.*, 718 F.2d 239, 244 (7th Cir.1983); *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 463 (7th Cir.1986).

In addition, where a moving defendant has rebutted a *prima facie* case of discrimination by presenting a legitimate, nondiscriminatory reason for its employment decisions, the district court may determine the ultimate issue of whether plaintiff has shown the proffered reason to be a mere pretext for discrimination. *Klein v. Trustees of Indiana Univ.*, 766 F.2d 275, 282 (7th Cir.1985).[1] The plaintiff's rebuttal evidence must focus on the defendant's specific reasons for taking the challenged employment action. *Id.* The rebuttal evidence must be sufficiently substantial to show that, in addition to defendant's proffered reasons, a discriminatory motive was

---

**1.** *Klein* is a Title VII case, but it is settled that the framework of proof in those cases is equally applicable in ADEA actions. *LaMontagne,* 750 F.2d at 1409 n. 1.

a determining factor or that defendant's reason is unworthy of credence. *Id.*

■ The threshold issue is whether plaintiff has presented sufficient direct evidence of age discrimination to resist summary judgment. He argues in his brief that certain statements made by some of defendant's employees constitute such direct evidence. The relevant statements are as follows: 1) Robert Albrecht told plaintiff when he returned to work in September, 1983 that "I was too old to have the job back as service mechanic and I had bad knees so they didn't want me to work under the buses, so we sent you to Darien." (Botma dep. p. 13). 2) Carol Januska, the Delavan terminal manager, told plaintiff in September, 1983 that "we all think you are getting too old to crawl over these buses, although you got 100% from your doctor and your knees are okay." (Botma dep. p. 32). 3) William Hunt, Albrecht and Januska referred to plaintiff as "the old dutchman." (Botma dep. p. 28).[2]

Defendant does not dispute that the above statements were in fact made. Even so, they do not raise a genuine issue as to defendant's discriminatory intent. David Lenon asserts in his affidavit that he has been the president of Lenon Bus Service since 1983 and that he made the decision not to reemploy plaintiff for the 1985–86 school year. His deposition testimony indicates that he also made the decision to transfer plaintiff to Darien in 1983 and to withdraw his salary and benefits in 1984 (Lenon dep. pp. 28, 30, 32). Consequently, the pertinent inquiry is into *Lenon's* motivation, as he was the person with complete authority to determine plaintiff's future employment. *LaMontagne v. American Convenience Prod.*, 750 F.2d 1405, 1412 (7th Cir.1984); *Mauter v. Hardy Corp.*, 825

F.2d 1554, 1558 (11th Cir.1987). There is simply no direct evidence that age was a determining factor in any of Lenon's decisions regarding plaintiff. Nor is there any record evidence that Lenon's decisions required the concurrence of Albrecht, Januska or Hunt. Their comments are therefore not probative, even if Lenon consulted with them on some matters. *LaMontagne*, 750 F.2d at 1412.

The next question is whether plaintiff has established a *prima facie* case of age discrimination by indirect proof. Defendant contends that plaintiff has failed to meet his burden of proof on one prong of his *prima facie* case: that he was doing his job well enough to meet his employer's legitimate expectations. Plaintiff does not address this issue in his brief. Indeed, he does not recite the elements of a *prima facie* case but instead appears to rely exclusively on direct evidence (set forth above) to oppose defendant's motion.[3]

However, when confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial. *Beard v. Whitley County*, 840 F.2d at 409 (emphasis in original), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party must do more than simply "show there is some metaphysical doubt as to the material facts." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

---

**2.** Plaintiff's brief alludes to other statements by defendant's employees that allegedly confirm discriminatory intent, but these are pertinent only with respect to claims that he suffered discrimination due to handicap and in retaliation for filing DILHR charges. They are irrelevant in the ADEA context since plaintiff's ADEA claim does not allege retaliatory discrimination. In addition, the statement offered as proof of retaliation—David Lenon's comment regarding plaintiff's having "started this bullshit with the State of Wisconsin" (Botma dep. p. 65)—is, read

in context, inconclusive and does not raise an issue as to Lenon's intent. *See Beard v. Whitley County REMC*, 840 F.2d 405, 411 (7th Cir.1988) (inappropriate remarks, standing alone, need not raise an inference of discriminatory intent).

**3.** The only evidence offered in support of plaintiff's position may be found in portions of his deposition testimony, attached to his brief in opposition to defendant's motion.

■ The uncontradicted evidence establishes that in the fall of 1982 David Lenon believed that plaintiff displayed a "lack of diligence in work" and "a little personality problem and problem with interpreting the work rules." (Lenon dep. p. 14). Plaintiff was not formally reprimanded but the matter was discussed with him. In February, 1985 plaintiff received a written reprimand listing five separate violations of work rules. Plaintiff does not deny that at least four of the allegations were true and conceded that he understood the reprimand to be a final warning. He received another warning in March, 1985 for writing an excessive number of bad conduct reports. Again, he does not dispute that he received the warning or that the conduct it described did occur. In May, 1985—defendant's busiest period—plaintiff was absent from work on several occasions. There is some dispute as to whether plaintiff gave sufficient notice of his absences. Finally, David Lenon states in his affidavit that plaintiff was discharged "because of his past performance and deficiencies in his work record." (¶ 9)

I am persuaded that plaintiff has failed to raise a genuine issue regarding satisfaction of his employer's legitimate expectations. There is ample undisputed evidence —including a "final warning"—that David Lenon had reason to be dissatisfied, and indeed was dissatisfied, with plaintiff's work. And there is no question in this case that defendant's expectations were reasonable. The disputes that do exist (e.g., regarding adequacy of notice of absences) do not impeach the substance of the complaints lodged against plaintiff or the legitimacy of his employer's expectations. They do not preclude summary judgment. *See Mason v. Pierce*, 774 F.2d 825, 827–29 (7th Cir.1985); *Huhn v. Koehring*, 718 F.2d 239, 243–49 (7th Cir.1983).

Moreover, since the Darien terminal was closed in June, 1985, there is no evidence to support another element of plaintiff's *prima facie* burden: that his employer sought a replacement for him. I therefore conclude that plaintiff has failed to establish a *prima facie* case.

Assuming, for the sake of argument, that plaintiff has met his threshold burden, it is also clear to me that he has not successfully rebutted defendant's nondiscriminatory reasons for taking the actions it did. Defendant asserts that plaintiff's transfer to Darien had nothing to do with his age but rather was the result of a personality conflict between plaintiff and the Delavan mechanic, Gerald Hinkleman. That conflict is documented in Hinkleman's affidavit. The record further discloses that William Hunt, plaintiff's replacement in Delavan, had had some problems in his former position and that defendant thought it could "kill two birds with one stone" by putting plaintiff in Hunt's position and vice versa. As to plaintiff's demotion from a salaried to an hourly employee, David Lenon stated in his deposition that he was not satisfied with plaintiff's job performance. Furthermore, the Darien service mechanic was not listed as a salaried position. Lastly, defendant points out that plaintiff tied for the most charter assignments in the fall of 1984, the semester immediately preceding his February, 1985 EEOC charge alleging loss of charters.

As explained above, plaintiff's rebuttal evidence must focus on defendant's specific reasons for taking the action it did. Plaintiff has taken less than careful aim in this case. His only rebuttal evidence on these points is his deposition testimony that he didn't have any problems getting along with anyone. Defendant alertly observes that plaintiff's evidence does nothing to refute defendant's showing that Hunt and Hinkelman were having difficulties and that defendant was committed to accommodating Hinkelman and his superior mechanical abilities. Plaintiff offers no argument, and can point to nothing in the record, to refute defendant's claim that plaintiff's job performance was inadequate. Defendant's other nondiscriminatory explanations also go unmet. Defendant is therefore entitled to summary judgment on this ground as well. *See Dale v. Chicago Tribune*, 797 F.2d 458, 464–65 (7th Cir.1986).

As this court will grant summary judgment to defendant on plaintiff's ADEA claim, only state claims under the Wiscon-

sin Fair Employment Act remain. These will be dismissed without prejudice for lack of pendent jurisdiction. *See Carnegie–Mellon Univ. v. Cohill,* —— U.S. ——, —— —— ——, 108 S.Ct. 614, 618–619, 98 L.Ed.2d 720 (1988).[4]

Accordingly, IT IS HEREBY ORDERED that defendant's motion for summary judgment be and the same is hereby GRANTED with respect to plaintiff's ADEA claim.

IT IS FURTHER ORDERED that the remaining state claims be and the same are hereby DISMISSED without prejudice.

---

**4.** Reluctance to exercise jurisdiction over these claims seems particularly appropriate in light of the current ambiguity, under Wisconsin law, as to the existence of a private right of action under the WFEA. This court has previously interpreted that law to hold that no private right of action exists. *See Busse v. Gelco Express Corp., et al.,* 678 F.Supp. 1398 (E.D.Wis.1988).