782 F.2d 689
 39 Fair Empl.Prac.Cas. 1774,
39 Empl. Prac. Dec. P 35,912
Michael F. POWERS, Plaintiff-Appellant,
v.
Elizabeth Hanford DOLE, Secretary of the United States
Department of Transportation, Defendant-Appellee.
 No. 85-1079.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 12, 1985.
Decided Jan. 27, 1986.
 
 Scott A. Mayer, Mayer & Mayer, Northbrook, Ill., for plaintiff-appellant.
 Anton Valukas, U.S. Atty., Elizabeth M. Landes, Asst. U.S. Atty., Chicago, Ill., for defendant-appellee.
 Before CUMMINGS, Chief Judge, RIPPLE, Circuit Judge, and PELL, Senior Circuit Judge.*
 RIPPLE, Circuit Judge.
 
 
 1
 The appellant, Michael F. Powers, brought an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e--2000e-17 against the Secretary of Transportation. He charged that he had been subjected to race and gender discrimination. The district court, 607 F.Supp. 841 (N.D.Ill.1984), denied his motion for summary judgment and granted the Secretary's cross-motion for summary judgment. We affirm.
 
 
 2
 * Michael Powers, the plaintiff, is a white male who has been an employee of the Federal Aviation Administration (FAA) of the United States Department of Transportation (DOT) continuously since August 30, 1981. In late 1981, Mr. Powers participated in the FAA Academy's training program for air traffic controllers. He was notified on December 14, 1981 that he had failed Phase IV, the final phase of the training program. Thereafter, Mr. Powers was removed from his GS-7 grade and assigned to another position within the FAA at a GS-3 grade.
 
 
 3
 On December 30, 1981, Mr. Powers filed an informal grievance with the FAA. He claimed that poor and inadequate instruction at the FAA Academy caused his training failure. He contended that retired contract instructors hired after a strike by active air traffic controllers gave him poor instruction during the daily lab problems. He also claimed that construction noise, lack of advance notice of seat rotation and problem assignments contributed to his failure. Mr. Powers requested that he be "recycled" by permitting him to undergo training again.
 
 
 4
 On February 23, 1982, Elmer Loudermilk, the FAA grievance examiner responsible for the initial review of Mr. Powers' grievance, issued a five-page report recommending that the grievance be granted. Mr. Loudermilk found that the effect of the construction noise was minimal and that the seat rotation and problem assignment claims were without merit. However, he did find that the quality of instruction was inferior to that which is normally given and that improved instruction would have resulted in a higher test score for the plaintiff. Examiner Loudermilk also found that Mr. Powers' rate of progress on the last three graded problems "tended to substantiate" his potential for recycling.
 
 
 5
 Kenneth C. Patterson, the official to whom the examiner's recommendation was submitted pursuant to the FAA's grievance procedures, rejected the recommendation. In an affidavit submitted in support of defendant's motion for summary judgment, Mr. Patterson stated that Powers had not demonstrated sufficiently that his failure was due to inadequate instruction. Patterson also stated that his decision was not based on the fact that Powers is a white male.
 
 
 6
 Paul K. Bohr, Director of the Great Lakes Region of the FAA, subsequently reviewed Powers' grievance pursuant to standard FAA procedures. He also concluded that it should be denied. Mr. Bohr relied upon the fact that only one of the instructors who graded Powers' problem was a retired contract instructor. That instructor had given Powers his highest grade on a problem. In his affidavit, Director Bohr stated that he found no merit to Powers' claim that inadequate instruction was the cause of his training failure. He also stated that the decision was not based on the fact that Powers is a white male.
 
 
 7
 On May 18, 1982, Powers lodged an informal discrimination complaint with Henry T. Rogers, the Equal Employment Opportunity counselor for the DOT in Chicago. Mr. Powers rejected the informal proposed resolution that he be recycled upon the condition that he complete twelve months of Air Traffic Assistant duties and that he maintain a good work record and be recommended by his supervisor. On May 19, Powers also filed a request with Director Bohr to reverse his decision, pointing out that, although only one contract instructor graded his problems, all of the instructors who did the actual teaching were contract instructors. The request was denied.
 
 
 8
 On June 29, 1982, Powers filed a formal complaint charging DOT with race and sex discrimination for failing to recycle him through training when females and minorities who showed inadequate FAA instruction were recycled. Powers also complained of improper and unfair handling of his FAA grievance. In support of his discrimination complaint, he submitted an affidavit with eight attachments. In his affidavit, Powers argued that the FAA erred in concluding that he had received adequate instruction in the air traffic controller training program. He also outlined the evidence he believed supported his claim of poor instruction. Mr. Powers contended that the FAA's refusal to recycle him was necessarily based upon his being a white male.
 
 
 9
 One attachment submitted by Mr. Powers was an affidavit of Ken Jackson, an FAA Terminal Supervisor. Mr. Jackson's affidavit stated his belief that, if Powers had been a minority member or a female, he would have been recycled by the FAA in order to negate the appearance of discrimination. The affidavit did not set forth any factual basis for the belief. Another attachment consisted of summaries of telephone conversations with two fellow students who had passed the training course, one assistant lead instructor, a terminal section chief, the class unit chief, the lead instructor, and a "one on one" instructor. These unsworn summaries expressed opinions as to the poor quality of instruction given in class. A further attachment was a petition by Powers' fellow classmates asking the administration to recycle those persons in the class who requested it because instruction given in the laboratory portion of the class by contract retired personnel was inadequate.
 
 
 10
 Mr. Powers also attached to his affidavit a letter from DOT outlining Examiner Loudermilk's record of decisions as an FAA grievance examiner during the years 1978 through 1983. The letter stated that Loudermilk had served as the examiner in twenty-eight cases. One case was still pending. Three grievances in which Loudermilk had issued recommendations involved minorities. Loudermilk had recommended denial in two of these cases and FAA management had accepted Loudermilk's recommendations. The other grievance involving a minority was settled. The other twenty-four cases involved white employees. In seventeen of these cases, Loudermilk had recommended that the grievances be denied. The FAA had accepted each of these recommendations. In seven cases, Loudermilk recommended that the grievance be granted. In six of the cases, the recommendation was accepted. The only case in which Loudermilk's recommendation was overturned was Powers'. The sex of the complainants was not indicated nor were the reasons for the complaints given.
 
 
 11
 In a memorandum also appended to Powers' affidavit, Kenneth Patterson set forth his reasons for not adopting Loudermilk's recommendation in Powers' case. Mr. Patterson stated that four out of the five personnel interviewed had said that the instruction was adequate. Mr. Patterson also pointed out that Powers had made the same errors in his practice problems in training as he did in his graded problems. Since the practice problems were critiqued, Mr. Patterson believed that the logical inference was that Powers did not learn from his mistakes.
 
 
 12
 FAA records included in the record of investigation of Powers' claim revealed that eleven individuals who failed the FAA air traffic controller training program filed FAA grievances seeking recycling during 1980 through 1983. Eight of the individuals, including Powers, were white males; one was a white female and one a minority male. Ten of these individuals were unsuccessful in their complaints. One white male was recycled. The reasons for these FAA grievances were not included in the record.
 
 
 13
 Powers' investigative file also contained information relating to discrimination complaints filed by individuals who claimed they were subjected to discrimination in the course of their training for air traffic controller positions. Regional FAA records from 1980 through December 11, 1981 indicated that six minority females and one white female had filed successful complaints of discrimination with the Civil Rights Staff. All of the complaints were formal; six of the complaints alleged discrimination based on racism or sexism in the Academy training as factors contributing to their failing the program. Two alleged medical problems and one alleged harassment. During this same period, an additional fifteen individuals filed unsuccessful complaints with the Civil Rights Staff. Six were white males, three were minority males, two were white females, and one was a minority female. No race was indicated with respect to one male and two females. Five of the seven males alleged that preferential treatment was shown to minorities or females in their classes. One female alleged discrimination against females during training. One minority male alleged favoritism of white females in recycling, and two white females claimed preferential treatment in training of minorities and minority females. One minority male claimed he received conflicting information from instructors. After December 11, 1981, the jurisdiction for processing Academy complaints was changed from the Great Lakes Region Civil Rights Staff to the exclusive jurisdiction of the FAA Academy Civil Rights Staff. Records obtained from the Academy's Civil Rights Staff for the years 1980 through 1983 showed that seventy-one complaints of discrimination were filed. Thirty-five of the complaints were from white males, twenty-four from minorities, and twenty-six from females. Nine of the individuals were successful. Seven successful complainants were females or minorities. One was a male whose race was unknown, and the other was a handicapped student, whose race and sex were not indicated. Four of the successful complaints dealt with inappropriate instructor conduct, one dealt with racial slurs from classmates, and three involved extenuating medical circumstances. The grievances of unsuccessful complainants were not indicated.
 
 
 14
 On April 6, 1984, the DOT issued a decision finding no discrimination in Powers' case. Mr. Powers then filed a complaint in the district court alleging discrimination on the basis of race and sex. He contended that minorities and females who showed cause were recycled and that he had shown cause and was not. Mr. Powers did not allege discriminatory training, but discrimination in the rejection of his FAA grievance; he claimed that he failed his training course because of poor instruction.
 
 
 15
 Mr. Powers filed a motion for summary judgment and a supporting memorandum. The memorandum included a one paragraph citation to statistics. His motion relied upon the complaint, the administrative record and the affidavits included with the administrative record. No other affidavits or materials were attached. He asserted that, from 1980 until 1981, twenty-two students requested recycling. Seven were recycled. They were all women. Of those denied recycling, seven were white males. "Plaintiff believes," he asserted, "that the foregoing data actually establishes a prima facie case contrary to the agency's view that it does not." The Secretary filed a cross-motion for summary judgment with a supporting memorandum. She attached exhibits from the administrative file as well as additional affidavits. The affidavits of Bohr and Patterson used in the administrative proceedings were appended along with an affidavit from an equal opportunity specialist with the FAA, stating that one white male who had filed an FAA grievance was recycled. Mr. Powers then filed a two-page reply memorandum substantially agreeing with the Secretary's statement of the facts. He separately filed a copy of the entire administrative record.
 
 
 16
 The district court denied Mr. Powers' summary judgment motion and granted the Secretary's cross-motion. The denial of Mr. Powers' motion was based on his failure to submit a statement required by Rule 12(e) of the General Rules of the United States District Court for the Northern District of Illinois.[1]
 
 
 17
 In granting the Secretary's cross-motion, the district judge ruled that "the plaintiff presents only conclusory allegations derived from the statistical evidence based on FAA records. Powers submits no other evidence which suggests that the DOT denied his request to be recycled because he is a white male." Memorandum and Order, R.25 at 5-6. The court continued:
 
 
 18
 Powers' pleadings and previous affidavit are insufficient to create a question of fact concerning whether the DOT denied his recycling request on discriminatory grounds. They merely refer to an inference, drawn from FAA records, that more minority males and females and nonminority females are granted recycling requests than nonminority males. Plaintiff points to no specific facts from which reverse discrimination can be proven, i.e., articulated DOT quotas. In addition, defendant points out that, unlike plaintiff, many of the minority and nonminority females who were granted recycling had complained of inadequate training due to discrimination.
 
 
 19
 There is a close distinction between the inference which the plaintiff seeks to draw from mere statistics and specific facts which could provide a basis for comparing his recycling request with those of others whose requests were granted. However, the Court is compelled to make this distinction in light of the strict requirements of Rule 56.
 
 
 20
 Although it is true that a court should give to the party opposing a summary judgment motion the benefit of all reasonably drawn inferences, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 [90 S.Ct. 1598, 1608, 26 L.Ed.2d 142] (1970), the mere possibility that a factual dispute may exist, without more, is an insufficient basis upon which to justify denial of a motion for summary judgment.
 
 
 21
 Powers' previous affidavit and pleadings at best hint that a question of fact may exist in this case. However, Rule 56 demands that Powers show specific facts indicating that a genuine issue does exist for trial. Posey v. Skyline Corp. [702 F.2d 102 (7th Cir.1983) ]... This requirement has not been met. The Court has no obligation to hypothesize or speculate about the various implications of Powers' factual presentation. Unsupported by other evidence, Powers' inference of reverse discrimination fails to go far enough to rebut the defendant's unambiguous affidavits.
 
 
 22
 Memorandum and Order, R.25 at 5-6.
 
 II
 
 23
 The basic standards for resolution of a summary judgment motion are well-established. Summary judgment may be granted only if the record, including pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. All factual inferences are to be taken against the moving party and in favor of the opposing party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); International Administrators, Inc. v. Life Insurance Co. of North America, 753 F.2d 1373, 1378 (7th Cir.1985). In reviewing a summary judgment, an appellate court must consider the entire record. If study of the record reveals that inferences contrary to those drawn by the trial court might be permissible, then summary judgment should be reversed. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); Munson v. Friske, 754 F.2d 683, 690 (7th Cir.1985). Presentation of cross-motions for summary judgment does not concede the absence of a material issue of fact. United States Trotting Association v. Chicago Downs Association, Inc., 665 F.2d 781, 785 (7th Cir.1981).
 
 
 24
 In Title VII cases, we approach the application of these principles with a special caution. Summary judgment is infrequently an appropriate resolution. McKenzie v. Sawyer, 684 F.2d 62, 67 (D.C.Cir.1982). The factual issues presented in such litigation, including the issue of discriminatory intent which is often proven by circumstantial evidence, cf. Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), cannot often be resolved on summary judgment. However, even when such issues of motive or intent are at stake, summary judgment is proper "where the plaintiff presents no indications of motive and intent supportive of his position." Munson, 754 F.2d at 690. An adverse party responding to a summary judgment motion must set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Klein v. Trustees of Indiana University, 766 F.2d 275, 283 (7th Cir.1985); see Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). "A party may not rest on mere allegations or denials of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue." Posey, 702 F.2d at 105.
 
 
 25
 In this case, the material submitted by Mr. Powers to resist the Secretary's motion for summary judgment was conclusory. He simply did not present specific facts which tended to establish that the Secretary had intentionally discriminated against him. In support of her motion, the Secretary submitted affidavits from Messrs. Bohr and Patterson as well as other exhibits. The affidavits recite that neither Bohr nor Patterson were persuaded that inadequate instruction was the reason for Powers' failure. Both deny that any discriminatory reasons entered into their decisions. The Secretary's exhibits related to the statistics on recycling. Mr. Powers relied upon the affidavits and other materials he submitted in the course of the administrative investigation of his discrimination claim.[2] All of this material is conclusory in nature and raises no issue of material fact to rebut the Secretary's claim that the Department acted for a legitimate governmental reason. See Klein, 766 F.2d at 280-83. For example, in his affidavit, Powers contended that the FAA made the wrong decision in concluding that his training was adequate. He also contested Bohr's conclusion that he did not learn from his mistakes. Mr. Powers then argued that the FAA made this decision because he was a white male. However, the affidavit points to no specific facts from which reverse discrimination could be established. The fact that his was the only case in which Examiner Loudermilk's recommendation was overturned does not tend to establish that Powers was discriminated against since, in seven out of twenty-four cases involving white males, Loudermilk's recommendation that recycling be granted was accepted. In two of the cases involving minorities, his recommendation of denial was accepted. The only other case involving a minority was settled. Powers also relied on the Jackson affidavit which stated Jackson's belief that if Powers had been a minority or female he would have been recycled. However, Mr. Jackson's affidavit cited no facts supporting this belief. Conclusory allegations that have no factual support are insufficient to create a genuine issue of material fact. Patterson v. General Motors Corp., 631 F.2d 476, 482 (7th Cir.1980), cert. denied, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).
 
 
 26
 Statistical evidence can be relied upon to establish that the defendant intended to discriminate against the plaintiff. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 805, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); International Brotherhood of Teamsters v. United States, 431 U.S. 324, 339-41, 97 S.Ct. 1843, 1856-57, 52 L.Ed.2d 396 (1977); Aguilera v. Cook County Police and Corrections Merit Board, 760 F.2d 844, 846 (7th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 237, 88 L.Ed.2d 238 (1985). But the statistical evidence in this case does not provide factual support for Powers' claim. Mr. Powers offered the statistics dealing with discrimination on the basis of race or sex in the training program. Charitably read, they suggest that more minorities and non-minority females were successful in bringing such claims. However, Mr. Powers makes an entirely different allegation. He does not allege that he was discriminated against in the training process. He alleges that his FAA grievance, alleging poor instructors and his consequent failure, was handled in a discriminatory manner because of his race and sex. The minorities and females who were recycled did not have the same type of complaint as Powers and were, therefore, not similarly-situated employees. Indeed, the only person to succeed in obtaining recycling by the filing of an FAA grievance (thereby placing him in the same situation as Powers) was another white male.
 
 
 27
 The unsworn summaries of telephone conversations which Powers included as attachments are inadmissible hearsay. On a summary judgment motion, when a party seeks to offer evidence through exhibits, they must be identified by affidavit or otherwise be admissible. Martz v. Union Labor Life Insurance Co., 757 F.2d 135, 138 (7th Cir.1985). In any event, these summaries are conflicting as to the adequacy of training and do not discuss the alleged discrimination against Mr. Powers.
 
 
 28
 Also attached to Mr. Powers' affidavit are the letters of Messrs. Bohr and Patterson setting forth reasons for concluding that Powers received adequate training. These documents only raise the issue of whether Powers did in fact receive adequate training--not whether Powers was subject to discrimination in the grievance procedure because he was a white male. Similarly, the signed class petition only raises the issue of adequate instruction.
 
 
 29
 Mr. Powers asserts that summary judgment was inappropriate since no discovery took place. He relies upon Cedillo v. Int'l Assoc. of Bridge & Structural Iron Workers, 603 F.2d 7, 11 (7th Cir.1979), for the proposition that summary judgment is inappropriate where no discovery has taken place. However, in Cedillo, the plaintiff was denied the opportunity to engage in discovery. In this case, Powers was given ample time and opportunity for discovery and declined to initiate discovery. Moreover, when the district court attempted to set a schedule for discovery,[3] Powers stated that he believed that summary judgment was appropriate. Under these circumstances, the appellant cannot assert a lack of opportunity to conduct discovery.
 
 
 30
 Although summary judgment is usually not proper in a case involving a weighing of conflicting versions of motive and intent, it is proper where the plaintiff presents no indication of motive and intent supportive of his position. Munson, 754 F.2d at 690. The mere possibility that a factual dispute may exist without more is an insufficient basis upon which to justify denial of a motion for summary judgment. Posey, 702 F.2d at 106. Powers has pointed to no specific facts which would rebut Bohr's and Patterson's affidavits.III
 
 
 31
 Our holding today is a narrow and fact-specific one. We reiterate that summary judgment is usually not proper in cases where the issue of motive and intent is at stake. However, the party resisting such a motion must still produce some factual basis for his position. "The mere possibility that a factual dispute may exist, without more, is an insufficient basis upon which to justify denial of a motion for summary judgment." Posey, 702 F.2d at 106. Since the appellant failed, despite the opportunity for discovery offered by the district court, to fulfill this minimal burden, the judgment of the district court is affirmed.
 
 
 32
 AFFIRMED.
 
 
 
 *
 Judge Pell terminated his participation in this case as of December 31, 1985, without participation in the decision
 
 
 [1]
 Rule 12(e) provides:
 [W]ith each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure the moving party shall serve and file, in addition to the affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a statement of the material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law, including with that statement references to the affidavits, parts of the record and other supporting materials relied upon to support such statement. Failure to submit such a statement constitutes grounds for denial of the motion.
 
 
 [2]
 Powers has also appended to his opening brief in this court a letter outlining the FAA's affirmative action program and a graph showing the percentage of minority and female air traffic controllers. This material was not part of the record on appeal and was not provided to defendant's counsel or presented to the district court. Moreover, the material was not filed with this Court pursuant to a proper motion to supplement the record on appeal under Fed.R.App.P. 10(c). On appeal of a summary judgment, the appellate court can usually consider only the evidence that was presented to the trial court. In re Morris Paint and Varnish Co., 773 F.2d 130, 136 (7th Cir.1985)
 Nevertheless, Powers argues that this court should consider the material. Powers relies on Matthews v. Marsh, 755 F.2d 182, 183-84 (1st Cir.1985). In Matthews, the First Circuit decided the case based upon evidence presented by the defendant which was not provided to the district court. But, Matthews is distinguishable because, in that case, the defendant sought the information during discovery, but the district court denied the discovery motion. Also, the new information rendered the appellate court's decision advisory. Neither factor is present in this case.
 Powers also contends that this court should take judicial notice of the information as an official publication. We decline to do so. First, Powers has improperly raised this issue for the first time in his reply brief in this court. Second, it is unlikely the information appended even qualifies as an official government document. Even if it does, it has not been properly authenticated as required by Fed.R.Civ.P. 44(a)(1). Judicial notice of an unauthenticated government record is improper. Celanese Co. of America v. Vandalia Warehouse Co., 424 F.2d 1176, 1180 (7th Cir.1970).
 
 
 [3]
 The following excerpt relates to the cross-motions for summary judgment:
 THE COURT: Are you ready to try the case?
 MR. BYLINSKI: At this moment, your Honor?
 THE COURT: Yes, at this moment.
 MR. BYLINSKI: No.
 THE COURT: How long would you need to complete your discovery and be prepared to go to trial?
 MR. BYLINSKI: Your Honor, we don't need a trial in this case. I believe I can use a motion for summary judgment to do that.
 THE COURT: How long would you need to file your memorandum in support of your motion for summary judgment?
 MR. BYLINSKI: I suppose, begging your indulgence, your Honor, I would have to look it up.
 THE COURT: Look what up?
 MS. LANDES: Your Honor, no discovery has been conducted so far. We filed our answer.
 THE COURT: Do you agree that the case is one that is a proper subject matter for summary judgment?
 MS. LANDES: They can file the motion for summary judgment. We feel that--
 THE COURT: Would you file a cross-motion?
 MS. LANDES: We would, your Honor.
 THE COURT: Okay. Leave given.
 MS. LANDES: Thank you, your Honor.
 THE COURT: Before you leave, let's set a schedule. When had you filed your complaint? Well, that's all right. How long would you need to file your memorandum in support of your motion for summary judgment?
 MR. BYLINSKI: Pardon me?
 THE COURT: How long would you need to file your memorandum in support of your motion for summary judgment?
 MR. BYLINSKI: Oh, let's say about thirty days, your Honor.
 THE COURT: Very well. Thirty days. How long would you need to file your cross-motion?
 MS. LANDES: Twenty days, your Honor.
 THE COURT: Twenty days. How long would you need to answer your opponent's cross-motion for summary judgment and reply to their response to your motion for summary judgment?
 MR. BYLINSKI: I'll leave that to your Honor's discretion.
 THE COURT: No, I will leave it to you.
 MR. BYLINSKI: Well, I think I can handle it in twenty days, your Honor.
 THE COURT: Twenty days. Very well. The court will take it under advisement and advise you by mail.
 MS. LANDES: Thank you, your Honor.
 MR. BYLINSKI: Thank you, your Honor.