**Linda S. SEITZ, Plaintiff,**

v.

**PEAT MARWICK MAIN & CO., Defendant.**

**No. 86 C 6839.**

United States District Court, N.D. Illinois, E.D.

Jan. 19, 1989.

---

George Galland, Jr., Fay Clayton, Davis, Barnhill and Galland, Chicago, Ill., for plaintiff.

John Levi, Patricia Casey, Lawrence Kipperman, Sidley and Austin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Sometimes even the best of zealous advocates become overzealous, and file motions they should not. Plaintiff Linda S. Seitz has sued the accounting firm Peat Marwick Main & Co. ("Peat Marwick") under Title VII, 42 U.S.C. §§ 2000e et seq., alleging that Peat Marwick's Chicago office withdrew her name from partnership considera-

tion in March, 1985 because of her sex. Peat Marwick's attorneys have filed a motion for summary judgment on Peat Marwick's behalf. They should not have.

Peat Marwick contends that plaintiff has not offered any direct evidence that she was denied partnership because of her sex, and that under the indirect method she cannot prevail. Although plaintiff insists that she has direct evidence of discrimination against her, she focuses on the indirect —or prima facie case—method, and this court will confine itself to that approach.

Both sides agree that, in order to raise an inference of discrimination, plaintiff must prove (1) that she is a member of a protected group, a woman; (2) that she was qualified to be a partner; (3) that she was rejected for partnership; and (4) that a position as partner was left open or filled by a man. *Kirk v. Board of Education,* 811 F.2d 347, 354 (n. 10) (7th Cir.1987). If she does so, the burden shifts to Peat Marwick to "articulate a legitimate, nondiscriminatory reason for its actions." *Klein v. Trustees of Indiana University,* 766 F.2d 275, 282 (7th Cir.1985). Once Peat Marwick does this, plaintiff must prove "that the proffered reason is a pretext, an excuse for discrimination." *Dugan v. Ball State University,* 815 F.2d 1132, 1136 (7th Cir.1987). Plaintiff can satisfy this latter burden either by "show[ing] that, in addition to [the] proffered reasons, a discriminatory motive was a determining factor [or by] show[ing] that [the] proffered reason is unworthy of credence." *Klein v. Trustees of Indiana University,* 766 F.2d at 282 (citations omitted).

Of course, plaintiff need prove neither a prima facie case nor pretext at the summary judgment stage. All she must do is demonstrate, with regard to each issue on which she bears the burden of proof, that there "is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405 (7th Cir.1988).

Peat Marwick first attempts to show that plaintiff cannot establish a prima facie case. Although some of its arguments are only slightly more meritorious, Peat Marwick does not dispute factors (1) and (3)— i.e., that plaintiff is a woman and that she was not made a partner. It does, however, insist that plaintiff cannot demonstrate a genuine factual issue on factors (2) and (4)—i.e., that she was qualified to be a partner and that an available partnership existed at the time her partnership nomination was denied.

■ Peat Marwick's argument that plaintiff was not qualified to be a partner in the firm is truly remarkable. This is not a case of a disgruntled employee who, having repeatedly failed to meet her employer's expectations, now adds insult to injury by bringing a Title VII action. Plaintiff time and again, for a period of nearly ten years, received glowing written evaluations from her superiors at the firm.[1] In the fall of 1984, these superiors—all partners in the Chicago office's audit department—unanimously nominated her for partnership the following year, ranking her second of the four nominees from audit. When the Operating Committee in New York reviewed her nomination throughout the winter of 1985, it determined that she was an "outstanding" candidate for partner.

Now, it might be the case that, at trial, plaintiff will be unable to establish that she was qualified for partnership. Many of the audit partners have testified that, despite the praise they gave her in their written evaluations, plaintiff had serious deficiencies in her accounting and leadership skills, and that these deficiencies formed the basis for their removal of her name from partnership consideration in March, 1985. If this court believes their testimony, then it might well determine that their written evaluations of her work (and her chance for partnership) were overstated, and that in

---

1. Although Peat Marwick insists that plaintiff's written evaluations were not glowing because they contained comments about her need to improve in certain areas, those comments demonstrate, not that plaintiff's performance was deficient, but merely that plaintiff was human. Time and again, plaintiff's overall performance was rated as "exceptionally fine," "exceptionally good," "above average," "very strong." That may not be "glowing" to Peat Marwick, but it is to many.

fact she was not qualified for partnership in this big eight accounting firm. But for Peat Marwick to argue that this court could so find at the summary judgment stage is not merely wrong, it is frivolous.

■ Peat Marwick next contends that plaintiff cannot establish a prima facie case because she cannot establish that an available partnership position was either left open or filled by a man.[2] Peat Marwick concedes that three men from the audit department were made partners in the year plaintiff was denied, and that numerous men from this department have become partners since. It contends, however, that the relevant position is partnership in the bank industry group—the audit department is subdivided into four industry groups— and notes that the only other person to have attained partnership from that group since plaintiff's rejection was Beth Pagnotta, a woman. Yet, Peat Marwick's argument on this score contains two fatal flaws.

First, Peat Marwick has not even come close to establishing the absence of a factual dispute regarding the position for which plaintiff was nominated. Although there is some evidence that partnership decisions were made on an industry group basis— e.g., one candidate was chosen from each group for partnership consideration in the plaintiff's year—there is considerable evidence that partnership decisions were made on a department-wide basis. For example, the audit partners ranked plaintiff against the other audit nominees in the fall of 1984, and all of the audit partners met in March of 1985 to discuss together whether plaintiff's name should be removed from their nominee list. *Compare Dugan v. Ball State University*, 815 F.2d 1132 (7th Cir. 1987) (plaintiff's comparisons confined to other candidates in her department because decisions being attacked were intra-departmental). Only at trial could this court determine whether a position as partner, other than the one (subsequently) filled by Beth Pagnotta, was available to plaintiff in 1985.

Moreover, even were this court to find at this stage that the bank industry group was the relevant group for determining whether a position existed for plaintiff, Peat Marwick would still not be entitled to summary judgment. In ¶ 22 of its statement of undisputed facts, Peat Marwick states that, when questioned by other partners in the firm about the dilemma of having two qualified partnership candidates ready for partnership in 1985—i.e. Ms. Pagnotta and plaintiff—two of the bank industry group partners "responded by outlining the bank partners' decision, which called for the nomination of [Ms.] Pagnotta the following year [1986] and by stating that they would review plaintiff's candidacy again [in the fall of 1985] after the completion of the busy audit season." This statement constitutes an admission by Peat Marwick that the bank industry could have handled two new partners in the 1985–86 period. Thus, it not only renders the motion for summary judgment on this score superficial, but might well prevent Peat Marwick from contesting the availability of a partnership position in the bank industry group when the case comes to trial.

■ Having determined that plaintiff has (more than) established a prima facie case at the summary judgment stage, the court now turns to Peat Marwick's contention that it had a legitimate non-discriminatory reason for not making her a partner. According to Peat Marwick, the Chicago office partners removed her name from the list of nominees it had presented to the Operating Committee because some of the partners in the audit department and bank industry group had concerns about her skills.

Before assessing this argument, it is worth noting that it substantially overlaps Peat Marwick's argument that plaintiff has failed to establish a prima facie case. As the court noted above, Peat Marwick's insistence that the concerns of a few part-

---

**2.** As plaintiff points out in her surreply brief, Peat Marwick "barely hinted" at this argument in its opening brief, and really did not raise it until its reply. Had plaintiff not filed a surre- ply, this court may have ignored it, but because plaintiff has now had the opportunity to respond to this argument, the court will address it.

ners sufficed to demonstrate that plaintiff was not qualified for a partnership position was frivolous. However, this same argument presented as a non-discriminatory reason for their not making her a partner was not. Even at the summary judgment stage, once a defendant in a Title VII case proffers a legitimate non-discriminatory reason for its actions, the burden rests on the plaintiff to come forward with evidence creating a genuine issue of fact as to the credence of this proffer. Peat Marwick was therefore entitled to offer its non-discriminatory explanation, and to shift to plaintiff the burden of demonstrating its falsity.

Yet, while Peat Marwick's efforts in this regard are not frivolous, they are hopeless. Although a Title VII plaintiff must prove at trial that her employer's proffered non-discriminatory reason is "a pretext for intentional discrimination," *North v. Madison Area Association for Retarded Citizens–Developmental Centers Corp.*, 844 F.2d 401, 406 (7th Cir.1988), all she must do at the summary judgment stage is "offer proof which casts doubt on the veracity of the employer's stated reason for its actions." *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 98 (7th Cir.1985).

Peat Marwick presents the testimony of four partners to defend the audit department's decision to withdraw her name from the partnership nomination list in March 1985: Mural Josephson, Paul Snyder, Michael Lavin, and James Coogan. Of these four, however, only one worked with plaintiff after they unanimously agreed to nominate her in the fall of 1984—Paul Snyder. Accordingly, it is only Mr. Snyder's March, 1985 (purported) negative evaluation of her which could possibly be undisputed. As it turns out, it is not.

Although Mr. Snyder insists that plaintiff's work during the winter of 1985 was unsatisfactory, and tipped the scales against her, plaintiff has testified that both he and Mr. Bradley, another important partner in the Chicago office, informed her that her work had been outstanding. Indeed, according to plaintiff, Mr. Snyder specifically told her that he was surprised by the decision at the March meeting to withdraw her name from consideration. Thus, there remains a genuine factual issue as to whether technical deficiencies truly account for plaintiff's rejection.

■ Moreover, in addition to this factual dispute, there is plaintiff's testimony regarding a policy in the Chicago office of limiting the number of women recruited from colleges for entry level positions at Peat Marwick. Peat Marwick insists that this information is irrelevant because it refers to decisions about hiring, not decisions about partnerships, citing *Kier v. Commercial Union Insurance Co.*, 808 F.2d 1254 (7th Cir.1987); *Powers v. Dole*, 782 F.2d 689 (7th Cir.1986); and *Box v. A & P Tea Co.*, 772 F.2d 1372 (7th Cir.1985). Peat Marwick is wrong.

Preliminarily, it is worth noting that the Seventh Circuit did not say in the three cited cases that statistics about one type of employment decisions are irrelevant to whether discrimination occurred in another type of decision. In *Kier*, the Court merely held that the district court's refusal to admit such statistics was not an abuse of discretion. 808 F.2d at 1258–59. In the other two cases, the Court held that, relevant or not, such statistics were not sufficient to create a genuine issue of material fact for trial. *Powers v. Dole*, 782 F.2d at 695; *Box v. A & P Tea Co.*, 772 F.2d at 1379.

This latter distinction is significant because it sheds light on what at first glance appears to be an erroneous approach by the Court. The fact that someone intentionally discriminates against members of a minority in one phase of life surely is relevant to whether he intentionally discriminates against members of that group in other areas. *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597–98 (1st Cir.1987). As it is, however, statistical evidence of disparate treatment is one step removed from an actual intent to discriminate. The Seventh Circuit will allow district courts to take that step, in furtherance of the important policies underlying anti-discrimination laws. But when a plaintiff seeks to go one step further, to use statistical evidence in one area to show an *intent* to discriminate in

another, the Court has said that this goes too far, and accordingly that more is required to avoid summary judgment.

In this case, however, two steps are not necessary. Plaintiff does not merely seek to present statistical evidence of discrimination in hiring; instead, she has testified to direct evidence of an intentionally discriminatory policy against women at the hiring level. To say that this evidence is not relevant to Peat Marwick's approach to women partners is facetious.

██ Indeed, plaintiff presents a direct relationship between Peat Marwick's hiring policies and their partnership decisions, one that removes any doubt of the significance of plaintiff's testimony here. According to her, partners at Peat Marwick told her that the policy of limiting the number of female hirees was adopted precisely for the purpose of avoiding a large number of women coming up for partnership in later years. If her testimony is true—and for now the court must accept that it is—then this policy alone would allow this court to find that Peat Marwick's proffered reason for not making plaintiff a partner was a pretext for discrimination. *Rizzo v. Means Services, Inc.*, 632 F.Supp. 1115, 1129–30 (N.D.Ill. 1986).

### CONCLUSION

Peat Marwick's motion for summary judgment is denied.