953 F.2d 1079
 Jody CUSSON-COBB, Plaintiff-Appellant,
v.
Karl O'LESSKER, Willis Zagrovich, Frederick Corban, in their
official capacity as Commissioners of the Indiana
Utility Regulatory Commission, et al.,
Defendants-Appellees.
 No. 91-1694.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 3, 1991.
Decided Jan. 15, 1992.
 
 Frank B. Harshey (argued), Merriman & Harshey, Indianapolis, Ind., for plaintiff-appellant.
 Jon D. Krahulik, James L. Turner, Mary Beth Claus, David C. Campbell (argued), Bingham, Summers, Welsh & Spilman, Indianapolis, Ind., for defendants-appellees.
 Before WOOD, Jr., MANION and KANNE, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 In 1989, Appellant Jody Cusson-Cobb, a Republican, was fired from her position as General Counsel to the Indiana Utility Regulatory Commission by the newly-appointed Chairman, James Monk, who was a Democrat. Monk appointed David Zeigner, also a Democrat, to replace Cusson-Cobb as General Counsel. Shortly thereafter, Cusson-Cobb filed this § 1983 action alleging that she was fired because of her political affiliation in violation of the First and Fourteenth Amendments to the United States Constitution. The district court granted summary judgment for the defendants because Cusson-Cobb failed to present any evidence that political affiliation was a motivating factor in her discharge. We affirm.
 
 I.
 
 2
 The Indiana Utility Regulatory Commission ("IURC") is a five-member, bi-partisan commission responsible for regulating electric, gas, telephone, water and sewer utilities in Indiana. See Ind.Code § 8-1-1-2 et seq. The five commissioners of the IURC, including the chairman, are appointed by the Governor of Indiana. Ind.Code § 8-1-1-2. No more than three commissioners can be of the same political party. Id. The agency's purpose is to develop utility regulation which serves the public interest by providing dependable and reliable utility services at the lowest possible rates. Its duties include regulating rates, finances, service territories and safety.
 
 
 3
 The IURC has statutory authority to employ "sufficient professional staff" necessary for the commission to carry out its statutory duties. Ind.Code 8-1-1-3(h)(1). Pursuant to this authority, Cusson-Cobb, a Republican, was appointed as a staff attorney to the IURC in September 1986 and was elevated to General Counsel in January 1988. Cusson-Cobb served as General Counsel to the IURC until July 1989. Neither Cusson-Cobb's complaint nor her affidavit in opposition to summary judgment indicate who appointed her or whether her party affiliation was a factor in her appointment.
 
 
 4
 On May 5, 1989, Governor Evan Bayh--the first Democrat elected Governor of Indiana in twenty years--appointed James Monk (who at the time was a Democrat state legislator) chairman of the IURC. Monk replaced Chairman Les Duvall, a Republican. Prior to taking office as chairman, Monk asked David Zeigner, a Democrat, to accompany him to the IURC as General Counsel. Zeigner was a staff attorney for the Legislative Services Agency, an adjunct to the Indiana General Assembly, and had demonstrated his expertise in utility law while working with Monk on legislative matters. Zeigner agreed to accept the position of General Counsel in May 1989,[1] and Monk, on June 5, 1989, informed Cusson-Cobb that she was terminated from her position as General Counsel.
 
 
 5
 On October 2, 1989, Cusson-Cobb filed this § 1983 action claiming Monk fired her because of her affiliation with the Republican Party. Cusson-Cobb's complaint alleges that she is a Republican; her association with the Republican Party "was known to the Commissioners of IURC"; she was fired by Monk, a Democrat; and she was replaced by Zeigner, a Democrat. Cusson-Cobb also alleges that the termination of her employment with the IURC "violated her right to freedom of speech and political association."
 
 
 6
 The defendants filed a motion for summary judgment supported by Monk's affidavit stating that he did not know Cusson-Cobb's political affiliation when he was appointed chairman of the IURC or when he fired Cusson-Cobb. Monk also stated that he hired Zeigner as General Counsel of the IURC because of his expertise in utility law and experience with utility legislation.
 
 
 7
 Cusson-Cobb's answering affidavit merely repeated the allegations in her complaint. Although Cusson-Cobb again claimed that her political affiliation was "well known," she provided no evidence to support this conclusion. Also, Cusson-Cobb did not state or provide any evidence that her political affiliation was known by Monk. The district court granted the defendants' motion for summary judgment because Cusson-Cobb had not offered evidence that political affiliation was a motivating factor in her discharge.
 
 II.
 
 8
 We review the district court's grant of summary judgment de novo, applying the same standard as that employed by the district court. McMillian v. Svetanoff, 878 F.2d 186, 188 (7th Cir.1989). We will affirm the grant of summary judgment, therefore, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A party faced with a motion for summary judgment who bears the burden of proof on a particular issue may not rest on its pleadings but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact for trial." McMillian, 878 F.2d at 188 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). See also Powers v. Dole, 782 F.2d 689, 694 (7th Cir.1986). It is undisputed that firing a public employee because of her political affiliation violates the First Amendment and is actionable under § 1983, unless political loyalty is an appropriate qualification for the job. See Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Cusson-Cobb alleges that Monk discharged her because of her affiliation with the Republican Party. She has the initial burden of proving that political affiliation was a motivating factor in her discharge. Mt. Healthy City School Dist. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); McMillian, 878 F.2d at 190. To survive the defendants' motion for summary judgment, therefore, Cusson-Cobb must set forth specific facts raising a genuine issue as to Monk's motivation for firing her.
 
 
 9
 Cusson-Cobb has not raised a genuine issue of fact as to whether her affiliation with the Republican Party was a motivating factor in her termination. Monk, in his affidavit, unequivocally denied any knowledge of Cusson-Cobb's political affiliation. If Monk did not know that Cusson-Cobb was a Republican, he could not have fired her because she was a Republican. Cusson-Cobb has not provided any evidence to rebut Monk's statement. Cusson-Cobb does not claim that Monk knew her political affiliation. Rather, Cusson-Cobb relies on her personal conclusion that her political affiliation was "well known." Cusson-Cobb contends that because Monk was active in politics and her political affiliation was well known, it can be reasonably inferred that Monk knew she was a Republican. The flaw in Cusson-Cobb's argument is that she does not provide any facts to support the conclusory statement that her political affiliation was well known--she does not say how her political affiliation became so well known or who knew her political affiliation. Such a conclusory allegation without any factual support is insufficient to create a genuine issue of fact. McMillian, 878 F.2d at 188-89; Powers, 782 F.2d at 694-95.
 
 
 10
 We can only surmise why Cusson-Cobb thinks her party affiliation was "well known." She did not plead in her complaint nor did she state in her affidavit that she was originally appointed because she was Republican or that being a Republican was a condition precedent to being appointed or retained. Perhaps that is the "fact" that was supposedly "well known" to Monk and to all other savvy politicians who participated in the transition from a Republican to a Democrat administration. If so, there is nothing in the record to even raise this inference. She certainly raises no controverted fact. To survive summary judgment, Cusson-Cobb needs to show more than some blurry assumption that Monk should have known she was a Republican and that he likely replaced her for that reason. The only evidence is that he hired the person he wanted for the job--someone he knew well and who in his view had solid expertise in utility law.
 
 
 11
 Most of Cusson-Cobb's affidavit concentrates on diminishing the importance of her job, presumably to show that she was not a policymaker or a confidential advisor, or that her party affiliation was not an appropriate requirement for her effective performance.[2] See Branti v. Finkel, 445 U.S. at 518, 100 S.Ct. at 1294. Nothing in the record indicates that Monk even knew Cusson-Cobb before he first approached Zeigner, much less that he knew she was a Republican. Because Cusson-Cobb failed to raise a genuine issue of fact as to Monk's knowledge of her affiliation with the Republican Party, summary judgment was proper.[3]III.
 
 
 12
 For the foregoing reasons, the district court's grant of summary judgment in favor of defendants is
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Zeigner was later appointed a commissioner of the IURC
 
 
 [2]
 Because we conclude that Cusson-Cobb's party affiliation was not a determining factor in her job displacement, we need not reach the issue of whether she was a policymaker, a confidant or whether her party affiliation was an appropriate requirement for her effective job performance
 
 
 [3]
 Although this circuit has not held that the McDonnell Douglas/ Burdine framework of shifting burdens applies to cases of discrimination based on political affiliation, Cusson-Cobb would fare no better under that analysis. Even under McDonnell Douglas/ Burdine, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Cusson-Cobb has failed to meet this burden. If Monk did not know that Cusson-Cobb was a Republican, he could not have intentionally discriminated against her because she was a Republican