968 F.2d 1219
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Alexander YATES, Roy Yates, and Lowetta Yates, Plaintiffs-Appellants,
v.
HOWE MILITARY SCHOOL, an Indiana Corporation, Thomas S.
Merritt, Superintendent of Howe Military School, and Richard
Piper, Headmaster of Howe Military School, Jointly and
Severally, Defendants-Appellees.
 No. 91-3147.
 United States Court of Appeals, Seventh Circuit.
 Argued April 14, 1992.
Decided June 26, 1992.
 
 1
 Before RIPPLE and MANION, Circuit Judges, and WILL, Senior District Judge*
 
 ORDER
 
 2
 The Plaintiffs, Mr. and Mrs. Roy and Lowetta Yates and their son Alexander, instituted this civil rights action against Howe Military School after Alexander was discharged from Howe for an alleged violation of school rules. The district court granted the defendants' motion for summary judgment. For the reasons stated below, we affirm the judgment of the district court.
 
 
 3
 * BACKGROUND
 
 A. Facts
 
 4
 Plaintiffs Roy and Lowetta Yates enrolled their son, Alexander, at Howe Military School in January, 1986. Each of the plaintiffs is black and is an Illinois domiciliary. Howe is a private educational institution located in northeastern Indiana. At or near the time of enrollment, Mr. and Mrs. Yates entered into a "Student Enrollment Contract" with Howe. Under its terms, the Yateses obliged themselves to pay the semester tuition. The Contract also contained the following paragraph, which granted Howe the right to dismiss the Yateses' son upon certain conditions and referred the Yateses to the school's "Rules and Regulations":
 
 
 5
 I understand and agree that Howe Military School retains the right to dismiss the student from the School for cause, including but not limited to: unacceptable moral values, unacceptable social conduct, violation of the School rules, or failure to maintain acceptable standards of conduct as specified in the Howe Military School Rules and Regulations of which I have been furnished a copy.
 
 
 6
 R. 17 Ex.B. Three portions of the "Rules and Regulations" are also relevant to this case. First, the Rules prohibit consumption of alcoholic beverages:
 
 11. LIQUOR AND INTOXICATING BEVERAGES:
 
 7
 The use of liquor or intoxicating beverage, in any form, on campus or off campus, while Cadets are on pass or on local public transportation, while traveling on or reporting back from leave or pass, is prohibited. Cadets suspected of violating this regulation will be required to meet a General Disciplinary Board. A GUILTY VERDICT WILL RESULT IN DISMISSAL.
 
 
 8
 R. 17 Ex.C. at 17. The Rules also describe the purpose of the disciplinary board to include conformity with "the basic principles of American Democracy":
 
 
 9
 SECTION III--CITIZENSHIP AND DISCIPLINARY BOARDS
 
 PURPOSE:
 
 10
 a. The philosophy and objectives of Howe Military School conform to the basic principles of American Democracy.
 
 
 11
 R. 17 Ex.C. at 7. Finally, the Rules indicate that Howe participates in the federally-funded Junior Reserve Officers' Training Corps (JROTC) program, and that all students ("cadets") must participate in JROTC:
 
 4. JROTC COMMITMENT:
 
 12
 HOWE MILITARY SCHOOL IS DESIGNATED A MILITARY INSTITUTE (MI). LEADERSHIP DEVELOPMENT (LD) IS REQUIRED OF ALL CADETS--GRADES 9 THROUGH 12.
 
 
 13
 R. 17 Ex.C. at 22. Alexander Yates was enrolled at Howe, under this or similar Contracts and Rules, through the fall of 1987.
 
 
 14
 On or about December 6, 1987, Alexander Yates and two fellow cadets, Shane Barton and David Koby, who are white, were accused of leaving campus without permission and consuming alcoholic beverages on campus. The Commandant of Cadets, Lt. Col. William C. Trout, sent a memo to the School Superintendent, Col. Thomas S. Merritt, describing the evidence he had gathered and recommending that a General Disciplinary Board meet to determine the fate of the boys. In relevant part (with a few grammatical corrections) this memo read:
 
 SCENARIO OF THE INCIDENT:
 
 15
 The above-named Cadets departed campus 6 December 1987, sometime in the afternoon with two 16 year-old girls and returned back to campus before 3rd mess formation. While they were off campus with the girls, a case of beer was purchased. When the Cadets returned to campus, they hid the beer near the campus baseball field. After 3rd mess, Cadets Barton, Yates, and Koby went back to the hidden beer and drank two to three bottles. ....
 
 
 16
 I recommend that Cadets Shane Barton, Alexander Yates, and David Koby appear before a General Board to determine their guilt or innocence of the charge: possession and use of an alcoholic beverage. I also recommend that the parents of these Cadets be notified of this violation.
 
 
 17
 R. 17 Ex.H. Col. Merritt approved Lt. Col. Trout's recommendation; the following day each of the boys received notice of a General Disciplinary Board meeting to determine their guilt or innocence on charges of unauthorized absence from campus and use of an intoxicating beverage, and their parents received notice of the same.
 
 
 18
 Faced with these accusations and awareness that their parents had been notified, two of the cadets, Koby and Barton, admitted their guilt. Alexander Yates denied any guilt. Koby and Barton were each given twelve-week suspensions.[1] On December 14, 1987, Alexander Yates, with the assistance of his father, Roy Yates, and a faculty advisor, participated in a hearing before a General Disciplinary Board. According to the School Rules, Alexander was permitted to call witnesses, question opposing witnesses, and make a statement. The Board examined several witnesses, apparently including Koby and Barton, and concluded that Alexander Yates was guilty as charged. The Board recommended that he be dismissed, and Col. Merritt approved the recommendation.
 
 B. District Court Proceedings
 
 19
 The Yateses filed a three-count claim against Howe. Each claim was predicated upon alleged racial discrimination in the disciplinary proceedings. The first count alleged that the discrimination constituted a breach of the Student Enrollment Contract, specifically its statement that "[t]he philosophy and objectives of Howe Military School conform to the basic principles of American Democracy", in violation of Indiana law. The second count alleged that the discrimination violated their rights under Title VI, 42 U.S.C. § 2000d. The third count alleged that the discrimination violated their rights under 42 U.S.C. § 1981. R. 1. The defendants soon filed a motion for summary judgment, in which they argued that (1) the contract claim should fail because Howe provided Alexander Yates with a full hearing as it promised in the contract, and Howe explicitly stated in the contract that Howe retained the right to expel a student for failure to maintain acceptable conduct; (2) the Title VI claim should fail because the Yateses could not prove any "nexus" between Howe's receipt of federal funds and the disciplinary dismissal, as required by Grove City College v. Bell, 465 U.S. 555 (1984), and David K. v. Lane, 839 F.2d 1265 (7th Cir.1988); and (3) the section 1981 claim should fail because it does not concern the formation of or enforcement of the contract, as is required under Patterson v. McLean Credit Union, 491 U.S. 164 (1989).
 
 
 20
 In response, the Yateses argued that the case presented a genuine issue of material fact as to whether the defendants had racially discriminatory intent, and thus it was not properly resolved on summary judgment. In support of this allegation, the Yateses contended only that two white students who were identically accused were not expelled. R. 22 at 4. In reply, the defendants point out that the two white students confessed to their guilt and asked for special consideration, while Alexander continued to deny his guilt in the face of substantial evidence. In an attached affidavit, Col. Merritt contended that Alexander's protestations of innocence, in light of the General Disciplinary Board's finding of his guilt, was inconsistent with the Honor Code and thus provided sufficient reason to give Alexander a more severe punishment than the twelve-week suspensions given the two white students.
 
 
 21
 On August 14, 1991, the district court issued a memorandum and order granting the defendants' motion for summary judgment. The district court declined to reach the merits of plaintiffs' underlying charge of racial discrimination, and instead resolved each claim on procedural grounds. The court found the section 1981 claim barred by Patterson and the Title VI claim barred by Grove City College. With respect to the contract claim, the court held that handbook's statement that "[t]he philosophy and objectives of Howe Military School conform to the basic principles of American Democracy" was only "a descriptive summary of the 'philosophy and objectives' of the school, not a list of rights given to cadets under the enrollment contract." R. 24 at 12. The Yateses timely filed a Notice of Appeal.
 
 II
 A. Relevant Standards
 
 22
 We review de novo a district court's grant of summary judgment. Doe v. Allied-Signal Inc., 925 F.2d 1007, 1008 (7th Cir.1991). Our task is to determine whether the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). We " 'must view the record and all inferences drawn from it in the light most favorable to the party opposing the motion.' " Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.1990) (quoting Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir.1989)). While any inferences drawn from the facts must be viewed in the light most favorable to the non-moving party, only reasonable inferences need be made. Hermes v. Hein, 742 F.2d 350, 353 (7th Cir.1984); Korf v. Ball State Univ., 726 F.2d 1222, 1226 (7th Cir.1984).
 
 
 23
 The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Id. at 325 ("the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. Id. at 324. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. Id. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 B. Applied to this case
 
 24
 The Yateses do not appeal the district court's resolution of the section 1981 claim. Rather, the Yateses argue that the district court erred with respect to the Title VI claim and the contract claim. With respect to Title VI, the Yateses argue that the district court erred in two respects in concluding that Grove City College barred their claim. First, the Yateses argue that their claim survives Grove City College because there was a sufficient nexus between the federal funding received by Howe and the disciplinary proceeding in question. Second, the Yateses argue that the Civil Rights Restoration Act of 1987 (which was not actually enacted until March, 1988) overruled Grove City College and is retroactive. In response, the defendants contest the proposed nexus and suggest that the Yateses waived their Civil Rights Restoration Act argument by failing to raise it before the district court.
 
 
 25
 With respect to the contract claim, the Yateses argue that the court erred by interpreting an ambiguous contractual provision on summary judgment, rather than postponing the necessary factual inquiry and balancing necessary to distill the import of the disputed language. In response, the defendants suggest that the district court properly found the relevant contract language to unambiguously constitute merely a descriptive summary of the 'philosophy and objectives' of the school.
 
 
 26
 We do not need to reach the legal entanglements presented by the parties because the record supports a more direct method of affirmance, and, as this court has repeatedly noted, we can affirm on any ground that has sufficient basis in the record. Roland v. Langlois, 945 F.2d 956, 962 n. 11 (7th Cir.1991). The heart of this lawsuit is the Yateses' claim that the defendants discriminated against Alexander Yates based upon his race. As the defendants argued in their summary judgment briefs, the Yateses failed to allege any facts from which such discrimination can be inferred. The Yateses' response fails to provide any such facts; the Yateses rely solely on the fact that Alexander Yates was given a more severe punishment than two white cadets who were charged with identical offenses. But Yates distinguished himself from his two white friends by continuing to deny the allegations in the face of mounting evidence, including confessions by the two white cadets. According to the affidavit submitted by Col. Merritt, Yates' protestations of innocence in the face of substantial evidence of his guilt constituted a violation of the Howe Honor Code. The Yateses failed to present the district court with any evidence to counter the obvious deduction that Alexander Yates' more severe penalty was a result of his steadfast denial of guilt rather than his race. Thus, the district court could have granted the defendants' motion for summary judgment on the Yateses' failure to come forth, in response to the defendants' motion for summary judgment, with sufficient factual allegations to create a genuine issue of material fact on the central issue--upon which the Yateses bear the burden of proof--of the defendants' discriminatory motive.
 
 
 27
 We recognize that summary judgment is improper in a discrimination case when there is conflicting evidence of motive or intent. Stumph v. Thomas & Skinner, Inc., 770 F.2d 93, 97 (7th Cir.1985). Indeed, in discrimination cases we approach the issue of summary judgment with "special caution." McMillian v. Svetanoff, 878 F.2d 186, 188 (7th Cir.1989). But summary judgment is "not always inappropriate simply because issues of motive or intent are raised in the case." Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir.1989). To the contrary, "summary judgment is proper 'where the plaintiff presents no indication of motive or intent supportive of his position.' " Id. (quoting Powers v. Dole, 782 F.2d 689, 694 (7th Cir.1986)). In the present case, the Yates failed to present any direct or indirect evidence that the defendants had a discriminatory motive or intent. The fact that Alexander Yates was treated more severely than his cohorts only supports an inference of discrimination when considered in isolation. But the full picture includes the undisputed facts that Alexander Yates consistently denied the charge while his cohorts confessed, the General Disciplinary Board found him guilty of the charge after full hearing, and such conduct is considered violative of the Howe Honor Code. Even when viewed in the light most favorable to Alexander Yates, the fact that he was more severely punished fails to support an reasonable inference of discriminatory motive or intent under the circumstances.
 
 Conclusion
 
 28
 for the foregoing reasons, the judgment of the district court is affirmed.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, Eastern Division, is sitting by designation
 
 
 [1]
 One of the boys withdrew from the school rather than accept the suspension